EDWARD GOLDSTEIN, PLAINTIFF-APPELLANT, v. BAR-CLAY AMUSEMENT CORP., A BODY CORPORATE, DE-FENDANT-RESPONDENT.

Submitted May 2, 1939—Decided August 15, 1939.

Before Justices CASE and HEHER.

For the appellant, *Milton M. Unger.*

For the respondent, *James A. Breslin.*

The opinion of the court was delivered by

HEHER, J. On December 14th, 1936, plaintiff's assignor, Affiliated Enterprises, Inc., and the defendant corporation entered into an agreement in writing whereby the first-named corporation, "the owner of the copyrighted and trade-marked name 'Bank Night' and of certain copyrights and patent pending of certain cards, posters, register and record books, film trailers and other accessories which may be used in staging the weekly feature known as 'Bank Night,'" granted to defendant, the operator of a motion picture theatre situate in the Borough of Ramsey, "a limited license to use Bank Night under the respective trade name, copyrights and patent pending above mentioned, * * * in connection with the operation" of the theatre, including "the right to use said name and all the above mentioned cards, posters, register and record books, film trailers and other accessories * * * as shall be furnished" to it by the grantor, in accordance with the "Bank Night Instructions" incorporated therein, for the term of fifty-two weeks commencing on December 28th, 1936, and ending on December 27th, 1937, the "rights" therein granted "to be used or exercised only on Monday of each week of the aforesaid term," and defendant undertook to pay to the grantor, "as license fees" therefor, "$7.50 per day during the life" of the agreement.

It was further therein provided that, "at any time after the expiration of the first twelve (12) weeks of the term of this license," the agreement "may be terminated by either party by giving to the other party thirty (30) days written notice of its intention so to do;" that "upon the termination" of the agreement "by expiration or otherwise, Licensee will

not exercise thereafter any of the rights" therein "granted, and will not use said Bank Night nor any modification thereof, nor any of the articles or accessories delivered to it pursuant" thereto, "nor said name 'Bank Night,' nor any similar name, articles or accessories, nor any feature any part of which may be similar to Bank Night as the same shall be used by Licensee pursuant to the terms" thereof; and that "no modification of" the agreement "shall be valid unless same shall be in writing and accepted by the parties" thereto "by the respective endorsements thereon."

Declaring that the "said agreement" was, "at the expiration" thereof, "continued by mutual consent of the parties thereto, under all the terms thereof," and that "the defendant continued to use the rights and privileges thereof, and * * * accepted the provisions of said agreement and the materials and other property therein referred to," and "the benefits thereof," for the period of fifty-seven weeks "from January 3d, 1937, to August 22d, 1938, excepting between January 17th, 1938, and February 21st, 1938," plaintiff brought this action to recover the debt thus claimed to arise under the pleaded contract—i. e., $427.50, "the charge per diem for the use of the license and paraphernalia from January 3d, 1937, to August 22d, 1938;" and the District Court judge, sitting without a jury, granted defendant's motion "for a directed verdict" in its favor on the grounds (a) that the "alleged modification of the original contract was not in writing as provided by the terms of clause 14" thereof; (b) "there was no legal proof of the facts and character of the alleged subsequent agreement;" (c) there was "no evidence that the officers of the defendant corporation had authority to bind the corporation by a subsequent oral agreement," and (d) "there was no legal evidence presented by the plaintiff to establish the indebtedness since there was no proof as to exactly when the defendant operated the 'Bank Night,' as alleged in the state of demand." The validity of the contract was not in question; nor is it challenged here.

In our view, the judicial action thus taken is not well-grounded.

The enforceability of the alleged second agreement does not turn upon its parol form. It was but the enlargement of the duration of the contract—extra its provisions—and not a "modification" of the contract itself within the intendment of paragraph 14 thereof. In common understanding, there is an essential difference between the two. The parties manifestly had in mind an alteration, change, or variation of the contract itself, and not a mere extension of its life upon the same terms and conditions. Compare *Johnston* v. *DePuy,* 15 *N. J. Mis. R.* 94; *Hunt* v. *Gorenberg,* 9 *Id.* 463.

Moreover, it was beyond the power of the parties so to restrict the right of contract. It is always within the province of the contracting parties to waive a provision such as this, and to modify a written contract by parol, unless the agreement is of a character required to be in writing by a peremptory rule of law. *Headley* v. *Cavileer,* 82 *N. J. L.* 635. See, also, 66 *A. L. R.* 649.

And there was evidence tending to establish the making of the pleaded agreement extending the term of the contract, and that the officer of the defendant corporation who presumed to act for it in that behalf had authority so to do. The letter forwarded by defendant to plaintiff under date of December 30th, 1937, is *prima facie* evidential of the making of the second contract by the defendant corporation. The case made by the plaintiff is not fatally deficient as lacking in proof to show (a) "how long the agreement was to continue," and (b) "when, where, and under what circumstances the parties mutually agreed to continue the written agreement after its expiration." The communication referred to betokens a continuance of the contractual relation for an indeterminate period, terminable at the will of either party; and, nothing more appearing, that is a fair inference. It was therefore error to rule as a matter of law that there was no "legal" evidence of the making of the asserted extension agreement. Of the function thus exercised by the trial judge, more will presently be said.

As to whether there was evidence of the claimed "indebtedness," defendant invokes the rule that findings of fact on conflicting evidence in the District Court are not reviewable

on appeal. But the difficulty is that defendant, without offering any evidence, moved "for a directed verdict" in its favor on the ground, *inter alia,* that there was no evidence tending to show the use of the copyrighted matter "on any of the dates alleged in the state of demand," and the trial judge ruled that the "indebtedness" was not established by "legal evidence," since "there was no proof as to exactly when the defendant operated the 'Bank Night' as alleged in the state of demand." This motion called for judgment on the ground that there was an utter lack of evidence to sustain a verdict for plaintiff in any sum within the issue framed, and thus there was presented the question of whether there was any evidence which, if accepted and given its fullest probative force, reasonably tended to sustain the pleaded cause of action, in whole or in part. *Sivak* v. *New Brunswick,* 122 *N. J. L.* 197; *Fitzpatrick* v. *Merchants & Manufacturers, &c., Co.,* 122 *Id.* 468; *Biczis* v. *Public Service Co-ordinated Transport,* 115 *Id.* 407. The judge so considered it. And we are of the view that it must be resolved in the affirmative.

The letter adverted to serves to show, not only the extension of the contract term by mutual consent, but also the use by defendant of the copyrighted material under the extension agreement. And a witness called by plaintiff testified—so the settled case discloses—that "he had visited" defendant's theatre "at least six times during the months between January, 1938, and October, 1938, and that on each visit he observed that the defendant was advertising the use of 'Bank Night' by displaying advertising signs in the lobby and on the marquee of the theatre." Thus there was evidence of the use of the copyrighted matter on at least six days of the period embraced by the state of demand. It was therefore error to hold as a matter of law that there was no evidence to support a verdict for plaintiff in any amount whatever. In this situation, the trial judge did not perform his function of evaluating the evidence adduced in the resolution of the factual issue thereby raised. And so there was error in point of law remediable on appeal. *R. S.* 1937, 2 :32-204.

The judgment is accordingly reversed, and a new trial awarded; costs to abide the event.